IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES F. CURRAN, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 13-5919 |
| | : | |
| SOUTHEASTERN PENNSYLVANIA | : | |
| TRANSPORTATION AUTHORITY, | : | |
| Defendant. | : | |

**MCHUGH, J.**                                                                                            **APRIL 7, 2015**

### MEMORANDUM

This is an employment case arising out of the unfortunate termination of Plaintiff James Curran after 17 years of service at Defendant Southeastern Pennsylvania Transportation Authority (SEPTA), when he failed a scheduled alcohol test.  Mr. Curran asserts a variety of claims under federal and Pennsylvania law.  Plaintiff offers no direct evidence of discrimination, but stitches together a series of other employment actions taken by SEPTA in an attempt to show unequal treatment.  What emerges from that attempt is a patchwork quilt showing no recognizable pattern of discrimination.  Lacking evidence from which a reasonable jury could find discrimination, I must grant SEPTA's Motion for Summary Judgment.

**I.      Factual Background**

Plaintiff James Curran was hired by SEPTA as a locomotive engineer in 1983 and was promoted to Regional Railroad Instructor in 1988.  His employment was terminated in June of 2010.  By contract, Plaintiff was required to submit to an annual Periodic Physical Examination, which includes a drug and alcohol screening. SEPTA's Drug Free Workplace Policy states that "Non-probationary employees who receive a . . . Verified Positive Alcohol Test Result in any

1

other test under this policy [including Periodic Physical Examinations] are discharged." Pl. Ex. A at 908.  As counsel for Plaintiff acknowledged during argument, SEPTA operates under a sophisticated set of policies, rules and procedures which are the product of collective bargaining.

Periodic Physical Examinations are scheduled in advance, and employees know that an alcohol test be will administered.  On June 1, 2010—the Tuesday after Memorial Day—Plaintiff reported for his Periodic Physical Examination, and tested positive for alcohol with a breathalyzer reading of .101 in the first administered test and .099 in the confirmatory test administered approximately nineteen minutes later.  As such, the result qualified as a "Verified Positive Alcohol Test" under SEPTA's policy because the concentration of alcohol was .04 or greater.[1]

Later that week, SEPTA's Medical Director sent an intra-office memorandum to the Manager of Rail Training, notifying him of Plaintiff's positive test and informing him that Curran was subject to discharge under the drug policy.  On June 11, 2010, a "Written Notice of Charges/Reasons for Imminent Discharge" was issued as formal notice of Plaintiff's termination.  Plaintiff appealed the decision, and a Determination Hearing was held before SEPTA's Director of Training.  On June 30, 2010, the Director of Training issued a "Written Notice of Determination" sustaining the charges against Plaintiff and discharging him from employment with SEPTA.  Plaintiff again appealed, and a Post-Determination Hearing was held in which "just cause" for Plaintiff's termination was confirmed.

Plaintiff is a white male, age fifty-six, with diabetes.  While he alleges no direct discrimination, Plaintiff holds out nine SEPTA employees as comparators who similarly tested positive for drugs or alcohol during a Periodic Physical Examination but were not terminated as

---

[1] Plaintiff originally contended that the test was invalid because the breathalyzer used could not take into account that he is diabetic.  This contention, which for all practical purposes has been abandoned, will be discussed in the context of Plaintiff's claim under the Americans with Disabilities Act.

2

he was, despite SEPTA's Drug Free Workplace Policy.  SEPTA's first response is that these comparators include individuals in the same protected classes as the Plaintiff, undercutting any inference of discrimination.  Second, as discussed in detail below, SEPTA has provided evidence about the particulars of each case to explain apparent disparities in treatment.

## II.     Race, Gender, and Age Discrimination Claims

Mr. Curran has asserted race, gender, and age discrimination claims under Title VII, the Age Discrimination in Employment Act (ADEA), and the Pennsylvania Human Relations Act (PHRA) against SEPTA.  Additionally, Plaintiff asserts disability discrimination claims under the Americans with Disabilities Act (ADA) and the PHRA based on his termination.  "Courts apply the same analytical framework to discrimination claims brought under the ADEA and PHRA as to those brought pursuant to Title VII."  White v. Planned Sec. Services, No. 10-2017, 2011 WL 6258307, at *3 n.5 (E.D. Pa. Dec. 15, 2011) (citing Wishkin v. Potter, 476 F.3d 180, 185 (3d Cir. 2007); Harley v. McCoach, 928 F. Supp. 533, 538 (E.D. Pa. 1996)).[2]  Discrimination claims under Title VII, the ADEA, and the PHRA are subject to the burden-shifting framework laid out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  A plaintiff must first establish a *prima facie* case of discrimination.  Goosby, 228 F.3d at 319.  After such a case has been established, the employer must come forward with a legitimate, non-discriminatory reason for the adverse employment action.  Id.  The plaintiff must then demonstrate that the reason given by the employer was a pretext for discrimination.  Id.

A *prima facie* discrimination case requires a plaintiff to establish that: (1) he is a member of a protected class; (2) he is qualified for the position; (3) he suffered an adverse employment

---

[2] Race and gender discrimination claims under Title VII and the PHRA are analyzed in the same manner and can be addressed collectively.  Goosby v. Johnson & Johnson Medical, Inc., 228 F.3d 313, 317 n.3 (3d Cir. 2000).  ADEA and PHRA claims for age discrimination are also governed by the same legal standard and can be addressed collectively.  Colwell v. Rite Aid Corp., 602 F.3d 495, 499 n.3 (3d Cir. 2010); Kautz v. Met-Pro Corp., 412 F.3d 463, 466 n.1 (3d Cir. 2005).

action; and (4) the action occurred under circumstances that give rise to an inference of unlawful discrimination.  See Jones v. School Dist. of Phila., 198 F.3d 403, 410-411 (3d Cir. 1999).  SEPTA concedes that Plaintiff can establish the first three elements:  the dispute here is whether there were circumstances that may give rise to an inference that Plaintiff was terminated as a result of his race, gender, or age.

Lacking direct evidence, Plaintiff asserts that there is circumstantial evidence of differential treatment.  Specifically, Mr. Curran argues that members outside of his protected class who engaged in the same conduct were treated more favorably by the employer.  See Bennun v. Rutgers State University, 941 F.2d 154, 170 (3d Cir. 1991) ("The plaintiff must prove by a preponderance of the evidence that . . . non-members of the protected class were treated more favorably."); Vernon v. A & L Motors, 381 Fed. App'x 164, 167 (3d Cir. 2010) (noting that the identification of a similarly situated individual outside of plaintiff's protected class that engaged in the same conduct as plaintiff did and was treated more favorably may give rise to an inference of unlawful discrimination).  Plaintiff has provided evidence of nine other SEPTA employees who tested positive for alcohol during a Periodic Physical Examination identical to the one that Plaintiff had taken between January 1, 2009 and April 19, 2011.  Pl. Ex. A at 819.  None of the nine were terminated as a result of their positive test, despite SEPTA's Drug Free Workplace Policy, which calls for termination of non-probationary employees who test positive for alcohol during a Periodic Physical Examination.  Pl. Ex. A at 908.

In response, Defendant asserts that these employees are distinguishable from Plaintiff.  One of the employees tested positive for alcohol, but the result registered below the .04 minimum threshold required by the SEPTA drug policy.  Seven of the employees had positive tests that were later reversed following review of their tests by Medical Review Officers, because

4

the positive results were determined to have been caused by prescription medications.  The final employee was found to have been administered the alcohol test in violation of SEPTA's rules, thereby eliminating it as a basis for disciplinary action.  At argument, counsel for Plaintiff conceded that he did not have a basis on which to challenge the trustworthiness of SEPTA's supplemental affidavit.  Transcript, Feb. 12, 2015 Hearing at 21.

Even if this Court were to set aside SEPTA's explanation for the purported disparities in treatment, Plaintiff must show that members **outside** of his protected class were treated more favorably in order to support an inference of discrimination.  The records show that the nine employees who were allegedly treated more favorably than Plaintiff consist of: seven males and two females; four black and five white; two below the age of 40 and seven above the age of 40.  Pl. Ex. A at 819.

Plaintiff in this case is a fifty-six-year-old white male.  Though it is clear that comparators outside Plaintiff's race, gender, and age class were not terminated after testing positive in Periodic Physical Examinations, it is equally clear that comparators **inside** Plaintiff's race, gender, and age class were also not terminated after testing positive in such a test.  Even assuming that Plaintiff has sufficiently demonstrated his *prima facie* discrimination claims by pointing to favorable treatment of comparators outside of his protected class, SEPTA, as a common carrier with a duty to operate safely for protection of the public, offers a compelling, legitimate, and non-discriminatory reason for its decision to terminate—Plaintiff tested positive for alcohol during a Periodic Physical Examination.  That result was verified by a second positive test shortly thereafter, and SEPTA's Drug Free Workplace Policy provides for his termination as a non-probationary employee.

At this point, under the McDonnell Douglas framework, the burden shifts back to Plaintiff to demonstrate that the reason offered for his termination by Defendant was pretext for discrimination. To demonstrate pretext, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994); Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 644 (3d Cir. 1998).

In attempting to prove pretext, Plaintiff continues to rely on the same evidence asserted in making his *prima facie* case—evidence that comparators outside of his protected class were treated more favorably. The Third Circuit has stated that "if the plaintiff has pointed to evidence sufficiently to discredit the defendant's proffered reasons, to survive summary judgment the plaintiff need not also come forward with additional evidence of discrimination beyond his or her *prima facie* case." Fuentes, 32 F.3d at 764. Nonetheless, as mentioned, the group of nine comparators that Plaintiff relies on in making his case contains a number of employees within Plaintiff's protected class that were also treated more favorably. The Third Circuit has further made clear that evidence of pretext "cannot be viewed in a vacuum." Simpson, 142 F.3d at 645.

The reasoning of Simpson is highly relevant to this case. There, the plaintiff was a store manager of a jewelry chain who was demoted at the age of fifty-seven for alleged performance issues. 142 F.3d at 643. In asserting an age discrimination claim, the plaintiff pointed primarily to a younger store manager who was not demoted or fired as a comparator, alleging that the plaintiff's performance was superior to her younger counterpart, but that only the plaintiff had been demoted. Id. at 645. The Third Circuit observed that, while the plaintiff relied on that one

6

comparator, she ignored thirty-five other managers who were demoted during the relevant period, all of whom were younger than the plaintiff.  The court concluded that, in demonstrating that a proffered reason for an adverse employment action is pretextual, a plaintiff "cannot pick and choose a person she perceives is a valid comparator who was allegedly treated more favorably, and completely ignore a significant group of comparators who were treated equally or less favorably than she."  Id. at 646-47.

When a plaintiff relies upon statistical disparity as proof, the probative value of the evidence depends upon the validity of the inference the factfinder is being asked to draw.  Such validity is in part a function of whether the statistical sample is representative. Failure to consider the entire baseline for comparison strips the inference of its logical power to persuade.  Simpson dealt with a situation where one  comparator outside of the plaintiff's protected class  was treated more favorably than the plaintiff, but many other comparators outside of the plaintiff's protected class  were treated the same or less favorably than the plaintiff.  Here, the facts are different, but the same logic applies.  Plaintiff points to those comparators outside of his protected class who were treated more favorably than him, but there are also a number of comparators *inside* Plaintiff's protected class who were treated more favorably than him, and treated equally with those outside of his protected class.  The lesson from Simpson is clear—the Court cannot simply look at the comparators who help Plaintiff's case and ignore comparators who hurt Plaintiff's case at the pretext stage of the McDonnell Douglas framework.[3]

---

[3] The Simpson court wrote:

> 'Such a pattern, in which blacks sometimes do better than whites and sometimes do worse, being random with respect to race, is not evidence of racial discrimination.' . . . [T]o hold otherwise would be to permit the inference of discrimination anytime a single member of a non-protected group was allegedly treated more favorably than one member of the protected group, regardless of how many other members of the non-protected group were treated equally or less favorably.  Such an inference may be acceptable at the *prima facie* stage of the analysis, see Burdine, 450 U.S. at 253, 101 S.Ct. at 1094 (recognizing that plaintiff's burden to establish a *prima facie* case is not

Plaintiff's claims are based on race, gender, and age.  Of the nine comparators that Plaintiff identifies, seven are the same gender as Plaintiff, five are the same race as Plaintiff, and seven are older than forty years old, like Plaintiff.  No other member of any  protected class - race, gender, or age -  was treated anything other than equally with those outside of their protected class.  Ultimately, at argument, Plaintiff was reduced to focusing exclusively on a single comparator, a black woman, who had tested positive for alcohol but was not terminated.  As to that employee, however, the test was improperly administered under SEPTA's policy and rules, and it could not be considered as a basis for disciplinary action.  To use a criminal law analog, there was evidence the policy had been violated, but the evidence was, by contract, suppressed.  Transcript, February 12, 2015 Hearing at 19.   More broadly, Plaintiff would have the court  focus on a single tree, to the exclusion of an entire forest of others whose treatment rebuts  any inference of discrimination.

Even setting aside Defendant's explanation for the treatment of these comparators, the circumstantial evidence provided only shows that Plaintiff was treated less favorably than everyone, including every other member of his protected classes.  A factfinder cannot reasonably determine that SEPTA discriminated against Plaintiff: (1) based on age, where it treated all other members and non-members of his age class equally; (2) based on gender, where it treated all other members and non-members of his gender class equally; or (3) based on race, where it treated all other members and non-members of his racial class equally.  These comparators do

---

"onerous"), where the inquiry is based on a few generalized factors, Hicks, 509 U.S. at 516, 113 S.Ct. at 2752, but not necessarily at the pretext stage where the factual inquiry into the alleged discriminatory motives of the employer has risen to a new level of specificity, see id.; Burdine, 450 U.S. at 255, 101 S.Ct. at 1095. . . . [T]here still must be evidence from which to infer discrimination apart from the fact that some members of one group are sometimes treated better and sometimes treated worse than members of another group.

Simpson, 142 F.3d at 646.

not indicate that discrimination was more likely than not a motivating or determinative cause for Plaintiff's termination. Taking the evidence as a whole, the logical inference that follows is that Plaintiff's termination stemmed from a characteristic unique to him individually—his failure of the alcohol tests in a setting where the applicable rules mandated termination—rather than class-based discrimination.

In conclusion, it is undisputed that Plaintiff tested positive for alcohol both initially and in a second confirmation test shortly thereafter, mandating his termination under SEPTA policy. The comparators do not support Plaintiff's assertion that the termination was motivated by Plaintiff's membership in a protected class. Additionally, there is nothing presented which discredits SEPTA's proffered reason for Plaintiff's termination. SEPTA has provided credible evidence explaining why each of the other comparators who tested positive for drugs or alcohol in a Periodic Physical Examination was not fired, and counsel for Plaintiff agreed at argument there was no reason to question the validity of its explanations.

Defendant's Motion for Summary Judgment will be granted with regard to Plaintiff's race, gender, and age discrimination claims brought under Title VII, the ADEA, and PHRA.

### III.  Disability Discrimination Claims

Plaintiff also asserts disability discrimination claims brought under the ADA and PHRA. "In order to make out a *prima facie* case of disability discrimination under the ADA, [Plaintiff] must establish that [he] (1) has a 'disability,' (2) is a 'qualified individual,' and (3) has suffered an adverse employment action because of that disability." Turner v. Hershey Chocolate U.S., 440 F.3d 604, 611 (3d Cir. 2006). Defendant argues that Plaintiff "has not established that: (1) he suffers from a disability that substantially limits a major life activity; or that (2) he has suffered an adverse employment action 'because of' that disability." Def. Brief at 13.

9

The first prong of an ADA discrimination claim requires that the plaintiff has a disability. Turner, 440 F.3d at 611.  Under the ADA, the term "disability" means "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).  Plaintiff alleges that he suffers from diabetes and takes medication for his condition. Endocrine function is a major bodily function that is covered under the definition of disability. 42 U.S.C. § 12102(2)(B).  Looking to the regulations accompanying this provision, it is clear that "diabetes substantially limits endocrine function," and therefore almost certainly meets the definition of disability.  29 C.F.R. § 1630.2(j)(3)(iii).

SEPTA argues that Plaintiff has not established that the decision-makers who terminated Plaintiff were aware he was diabetic at the time the decision was made.  It correctly observes that "to establish discrimination because of a disability, an employer must know of the disability." Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 380 (3d Cir. 2002).  The knowledge of other employees should not be imputed to those responsible for making the decision at issue.  Olson v. Gen. Elec. Aerospace, 101 F.3d 947, 954 (3d Cir. 1996).

In reply, Plaintiff alleges that he was diagnosed with diabetes by SEPTA, but provides no support for this other than his deposition testimony.  Def. SOF ¶ 5.  In 2007, during a Periodic Physical Examination, a SEPTA notation indicates that Plaintiff had elevated glucose. Additionally, Plaintiff cites to an "Event/Diagnosis List" from SEPTA Medical that shows that he was diagnosed with elevated glucose on June 29, 2007.  Pl. Ex. D.  It is not clear to me that those isolated lab results would necessarily have established the diagnosis, let alone that SEPTA decision-makers were aware of the elevated glucose.  Nonetheless, for the sake of argument, I will treat this as giving rise to an issue of fact.

10

Plaintiff's initial allegation was that there is evidence that the test itself was discriminatory because it would register false positives and the technology used could not account for the acetone levels present in diabetics. After SEPTA came forth with evidence that it used only devices designed to rule out such erroneous results, Plaintiff failed to respond. In fact, Plaintiff has provided no competent evidence that the testing instrument is susceptible to false positives based on the presence of acetone, relying only on his own opinion, including his claim that his doctor confirmed that such false positives were a "possibility." Def. SOF ¶ 50; Pl. SOF ¶ 22.

As a result, similar to his other discrimination claims, Plaintiff is forced to rely on the same nine comparators that Plaintiff alleges to have tested positive for alcohol during Periodic Physical Examinations, but were not terminated as a result. Plaintiff claims that none of the other nine employees had diabetes, a fact that he insists gives rise to the inference that he was treated less favorably as a result of his diabetes. While there is nothing in the record that conclusively indicates none of the nine comparators had diabetes, I will also treat this as giving rise to an issue of fact. Since disparate treatment may be present, Plaintiff has made a *prima facie* case of disability discrimination, tenuous though it may be.

The burden then shifts to SEPTA to provide a legitimate, non-discriminatory reason for the termination of the employee under the familiar McDonnell Douglas framework, see Flory v. Pinnacle Health Hospitals, 346 Fed. App'x 872, 876 (3d Cir. 2009), which Plaintiff in turn would need to show is pretextual. This is where Plaintiff's ADA and PHRA claims unravel. Defendant offers the valid reason that Plaintiff tested positive for alcohol in a scheduled Periodic Physical Evaluation, and was terminated according to SEPTA policy. Plaintiff offers no evidence that the given reason was pretext for disability discrimination, other than asserting that SEPTA did not

11

take the same action in the cases of the nine comparators who allegedly did not have diabetes. Standing entirely on its own, this might possibly raise a question, but SEPTA has offered credible and compelling reasons those comparators were treated differently. Plaintiff provides no evidence to throw these reasons into doubt, and even admits at argument that there is no reason to doubt SEPTA's explanation. The evidence that has been provided does not give rise to a supportable inference that discrimination was more likely than not a motivating or determinative cause of Plaintiff's termination.

Defendant's Motion for Summary Judgment will be granted with regard to Plaintiff's disability discrimination claims brought under the ADA and the PHRA.

### IV.  Conclusion

Defendant's Motion for Summary Judgment will be granted with respect to all claims. An appropriate order follows.

/s/ Gerald Austin McHugh  
United States District Court Judge
